

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

August 18, 2025

**BY ECF**

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re: *United States v. Hugo Montas*, 18 Cr. 866 (JPO)

Dear Judge Oetken:

      The defendant in the above-captioned case is scheduled to admit to specification number two in the June 30, 2025, violation memo—that on or about May 10, 2023, the defendant, while on supervised release, the defendant committed the crime of possessing a controlled substance in the third degree, in violation of New York Penal Law, Section 220.16(01), a Class B Felony. The defendant has requested that the Court immediately proceed to sentencing. For the reasons that follow, the Court should impose a sentence of 60 months' imprisonment to run consecutively to the state sentence the defendant is currently serving.

      **I.**    **The Defendant's Prior Federal Narcotics Conviction**

      On September 30, 2019, the defendant pled guilty before Your Honor to participating in a conspiracy to distribute at least one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A), and 846. (PSR ¶ 5.) The defendant's conviction arose from his agreement to sell fifteen kilograms of heroin to someone, who, unknown to the defendant, was an undercover law enforcement officer ("UC-1"). After some back-and-forth, Montas said he would hand over six kilograms of heroin laced with fentanyl and then, upon payment in full, $840,000, he would turn over the remaining nine kilograms of heroin. The transaction fell apart when UC-1 refused to meet Montas in his apartment building. Law enforcement later recovered from Montas's co-conspirators the six kilograms of heroin that Montas had agreed to supply UC-1.

      This Court sentenced Montas on February 21, 2020. The applicable Guidelines range was 87 to 108 months' imprisonment. (PSR ¶ 88.) The Government sought a sentence within the Guidelines range, and the Probation Office recommended a sentence of 87 months' imprisonment. (PSR at p. 18.) Ultimately, the Court principally sentenced the defendant to 48 months' imprisonment and three years of supervised release.

## II.   The Defendant's Immediate Return to Large Scale Narcotics Trafficking

The defendant commenced his term of supervised release in January 2022.  While under the Court's supervision, the defendant quickly returned to large scale narcotics trafficking.  As set forth in greater detail in the violation memo, in May 2023, the defendant and a coconspirator were arrested in the Bronx and charged with narcotics trafficking. Law enforcement seized from the defendant $120,000 in cash and the key to an apartment in which there was approximately five kilogram-sized bricks of cocaine as well as mail addressed to Montas and his coconspirator.  The defendant was charged by the Office of the Special Narcotics Prosecutor, and ultimately pled guilty to Criminal Possession of a Controlled Substance with Intent to Sell, Third Degree, in violation of New York Penal Law 220.16, a Class B Felony, and was sentenced to four and a half years' imprisonment followed by two years of supervision.

## III.   The Court Should Sentence the Defendant to Five Years of Imprisonment

When imposing a sentence for a violation of supervised release, the Court must consider the factors listed in 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, and the applicable Guidelines range. *See* 18 U.S.C. §§ 3553(a); 3583(e)(3).[1]

The only appropriate and just sentence here is the maximum prescribed sentence of five years imprisonment. This Court previously showed significant leniency, sentencing the defendant—for a "serious offense" of "trafficking a very large amount of heroin"—to 45 months' imprisonment, which was approximately 45% below the bottom-end of the applicable Guidelines range and what was recommended by the Probation Office and the Government. Feb. 21, 2020 Sent'g Tr., Dkt. 53, at 15-16. In bestowing this leniency, the Court emphasized the defendant's lack of criminal history, positive record in BOP custody, and "remorse." *Id.* at 16.

Leniency did not work. And the defendant's professed remorse has proven hollow. The defendant has demonstrated—through his immediate return to large scale narcotics trafficking—that he does not respond to leniency or stern warnings from the Court. Only a significant term of incarceration will serve the needs of sentencing here, principally affording adequate deterrence and protecting the public from dangerous narcotics trafficking.

The defendant was warned of the consequences if he returned to drug trafficking. The Court admonished the defendant: "If you fail to comply with [supervised release conditions], you'll be back before me, *and I will not be cutting your guidelines in half the next time*. If you do go back

---

[1] As the Supreme Court recently held in *Esteras v. United States*, 145 S. Ct. 2031 (2025), when revoking supervised release, district courts cannot consider the so-called "retributive" considerations, set forth in 18 U.S.C. § 3553(a)(2)(A), the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

to drug-dealing, I guarantee you, you will get caught, you'll be back here, so, please, when you get out, don't go back to this because it will have a negative effect, and you will be back in prison." *Id.* at 17 (emphasis added). In imposing a sentence that was significantly below the Guidelines range, the Court placed a great deal of trust in the defendant. In turn, the defendant wasted no time in betraying that trust by doing exactly what the Court warned again: "go[ing] back to drug dealing."

The sentence imposed by the Court should run consecutive to the state sentence that the defendant is currently serving.[2] The federal sentencing Guidelines include non-binding policy statements regarding imprisonment following revocation of supervised release. U.S.S.G. §§7B1.3, 7B1.4. When selecting a term of imprisonment for a violation of supervised release, "the sentencing judge may freely impose a term lower or higher than the recommended Guidelines range." *United States v. Ramos*, 979 F.3d 994, 999 (2d Cir. 2020).

The policy statement in U.S.S.G. §7B1.3(f) of the Guidelines provides that "[a]ny term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release." *See also* U.S.S.G. Ch. 7, pt. B, intro. cmt. ("It is the policy of the Commission that the sanction imposed upon revocation is to be served consecutively to any other term of imprisonment imposed for any criminal conduct that is the basis of the revocation.")

For the foregoing reasons, the Court should sentence the defendant to five years' imprisonment, to be run consecutively to any other term of imprisonment the defendant is currently serving. There is no need for further Court supervision because the defendant will be under state supervision once he is released from custody.

Very truly yours,

JAY CLAYTON
United States Attorney

by: _____
Nicholas W. Chiuchiolo
Assistant United States Attorney
(212) 637-1247

---

[2] According to the New York State Department of Correction's website, the defendant's current conditional release date is March 13, 2027.